UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


UNITED STATES OF AMERICA,

              Plaintiff,                                 Case No. 11-20288

    vs.                                      HON. LAWRENCE ZATKOFF

D-1 DEATRICE REED,

              Defendant.

_____/


## OPINION AND ORDER

AT A SESSION of said Court, held in the
United States Courthouse, in the City of Port Huron,
State of Michigan, on November 7, 2011


PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

## I.  INTRODUCTION

This matter is before the Court on Defendant's Motion to Suppress Evidence (Docket #24).

The Government filed a response, and Defendant filed a reply.  As the Court's consideration of

Defendant's Motion requires only an examination of the information contained within the "four

corners" of the search warrant affidavit, oral argument on the Motion is unnecessary and no hearing

shall be held. *See, e.g.*, *United States v. Brooks*, 594 F.3d 488, 492 (6th Cir. 2010).  For the reasons

set forth below, the Motion is denied.


## II.  BACKGROUND

### A.    Basic Information

Defendant is charged in a three-count indictment with: (1) conspiracy to possess with intent

to distribute controlled substances; (2) possession with intent to distribute cocaine, and (3) possession of a stolen firearm. 21 U.S.C. § 841(a) and (a)(1), 846, 18 U.S.C. § 922(j). The charges stem from events that occurred on August 27, 2010, and items seized during the execution of a search warrant at XXXXX[1] Flanders Street, Detroit, Michigan, on the same date. During the execution of the search warrant, the agents seized more than 28 grams of cocaine base, a .38 caliber revolver, multiple digital scales, narcotics packaging material and narcotics-related records.

The address searched is the house of Defendant's mother. For purposes of consideration of this Motion, particularly as it relates to Defendant's standing to challenge the search warrant, the Court accepts as true defense counsel's representations that Defendant: (a) has a key to the house, (b) maintains a bedroom in the house, (c) occasionally resides at the house with his mother, (d) stayed at the house in his bedroom on the evening prior to the search, (e) had planned to stay at the house on the evening of the date of the search, and (f) stayed at the house on evenings in close proximity to the date of the search.

**B.      The Search Warrant**

On August 27, 2010, law enforcement applied for a state search warrant (the "Search Warrant") for "XXXXX Flanders Street," Detroit, Michigan. The locations and person to be searched were described as:

> The premises and cartilage located at XXXXX Flanders Street, Detroit, Michigan. Further described as a two (2) story, one family dwelling house, constructed of brick with the second floor covered in white siding. The residence is located 2 (two) houses south of Elmo, on the west side of Flanders Street. . . . Additionally, the person believed to be Samuel Eric BOTTEN an African American male, born ************, standing 5'9", heavy set. Finally, the vehicle described as a 2007 Chevrolet Trail Blazer, Black in color, bearing

---

[1]The numerical street address was included in the Search Warrant but is deleted in this Opinion and Order pursuant to Fed.R.Crim.P. 49.1.

Michigan registration plate CEB1935.

Search Warrant, page 1.

The affidavit in support of the Search Warrant (the "Affidavit") was sworn to by Bureau of Alcohol, Tobacco and Firearms Special Agent Michael DeVantier ("Agent DeVantier"), an agent who has "been involved in numerous investigations relating to firearms and narcotic trafficking and [who] has obtained and served numerous search warrants in conjunction with these investigations." Affidavit, page 1 (third paragraph). The Affidavit states that the warrant was sought in connection with the narcotics trafficking investigation of an "individual believed to be Samuel Eric Botten." Affidavit, page 1 (sixth paragraph). This investigation stemmed from an undercover purchase of crack cocaine that occurred at approximately 2:24 p.m. on August 27, 2010, the same day that Agent DeVantier applied for the Search Warrant.

As set forth in the Affidavit, a Wayne County police officer, acting in an undercover capacity, drove to a Chelsea Street, Detroit, Michigan residence with an individual by the name of Jerome Kenny Bryant ("Bryant"). Affidavit, page 1 (seventh paragraph). When the Wayne County police officer and Bryant arrived, Bryant met with an unknown black male, who indicated that the narcotics would arrive "shortly." *Id.* Approximately 10 minutes later, an "individual believed to be Samuel Eric Botten"[2] arrived at the home in a black 2007 Chevrolet Trailblazer, license place CEB1935. *Id.* When the individual believed to be Botten arrived, the unknown black male approached the undercover officer and requested payment for the crack cocaine. The undercover officer responded that she needed to see the narcotics first. *Id.* The unknown black male then: (a) proceeded directly to the Chevrolet Trail Blazer; (b) met with the individual believed to be Botten;

---

[2]Defendant states in his Motion, "The person driving the [T]railblazer was not Samuel Botten, as listed in the Affidavit, but Defendant Deatrice Read . . ."

3

and (c) immediately returned with the crack cocaine, which he sold to the undercover officer. *Id*. After the sale, the unknown black male returned to the Chevrolet Trail Blazer driven by "Botten." *Id*.

After the undercover transaction concluded, agents surveilled the individual believed to be Botten as he departed the scene and drove to the house at XXXXX Flanders Street. Affidavit, page 1 (paragraph eight). Agents observed the individual believed to be Botten: (a) park in the driveway of XXXXX Flanders Street, and (b) enter the side door of the home. *Id*. Agents subsequently observed the individual believed to be Botten: (1) unlock the Trail Blazer, (2) remove items from the vehicle, and (3) carry them into the XXXXX Flanders Street home. *Id*. Finally, agents observed the individual believed to be Botten playing football in the yard, driveway and street in front of XXXXX Flanders Street. *Id*. Based on the foregoing, Agent DeVantier stated that he believed that the individual believed to be Botten was in control of XXXXX Flanders Street house. *Id*. Agent DeVantier further stated that a computerized check revealed that Samuel Botten had listed the XXXXX Flanders street address as his residence a year earlier, in 2009. *Id*. The Affidavit also stated that Samuel Botten had an outstanding warrant from the state of Arizona related to a drug charge and had been charged with another drug crime in 2008. Affidavit, page 1 (paragraph nine).

Agent DeVantier also represented that he was aware, based on his training and experience, that "residences are used to facilitate the sales of illegal narcotics by storing or preparing contraband, currency, to include pre-recorded government funds, and further, narcotics traffickers often used firearms to protect their drug trade." Affidavit, page 2 (paragraph one). The Affidavit further stated that:

> Based on the above facts, your affiant's training and experience in
> narcotics, and the successful undercover purchase of illegal narcotics

> from a subject who is believed to be Botten, your affiant believes
> there is probable cause that cocaine, pre-recorded government funds
> and other evidence of illegal narcotics trafficking is being stored and
> maintained at the above location by a subject who is believed to be
> Botten, . . .

Affidavit, page 2 (paragraph two).

## C.     Search Warrant Issued and Executed

At approximately 6:49 p.m. on August 27, 2010, law enforcement officers presented the

proposed search warrant and the Affidavit to a State of Michigan magistrate judge. The magistrate

judge signed the Search Warrant and a signed copy was in Agent DeVantier's hands by about 7:04

p.m. that evening.  At approximately 8:25 p.m. that evening, other agents stopped Defendant (the

individual whom they believed to be Samuel Botten) at a school football field.  Agents found a small

amount of marijuana and $710 in the 2007 Chevrolet Trail Blazer Defendant was driving, including

both of the $100.00 bills that the undercover officer used to pay for the crack cocaine during the

drug transaction on Chelsea Street at approximately 2:24 p.m. that day.  Shortly thereafter, task force

officers gained entry to the XXXXX Flanders Street home and found numerous items including the

crack cocaine, a .38 caliber revolver and the other items described above.  It is the evidence seized

from the XXXXX Flanders Street home on the evening of August 27, 2010, that Defendant now

seeks to suppress.

## III.  ANALYSIS

## A.     Introduction

Under the Fourth Amendment, "no warrants shall issue, but upon probable cause, supported

by oath or affirmation, and particularly describing the place to be searched, and the persons or things

to be seized." "[S]o long as the magistrate had a substantial basis for … conclud[ing] that a search

would uncover evidence of wrongdoing, the Fourth Amendment requires no more." *Illinois v. Gates*, 462 U.S. 213, 236 (1983) (citations and internal quotations omitted). In order to conclude that an affidavit establishes probable cause, the issuing judge must find that "given all the circumstances set forth in the affidavit before him … there is a fair probability that contraband or evidence of crime will be found in a particular place." *Id*. at 238.

To meet the nexus requirement of probable cause, "the circumstances must indicate why evidence of illegal activity will be found in a particular place." *United States v. Carpenter*, 360 F.3d 591, 594 (6th Cir. 2004) (en banc). In other words, "the affidavit must suggest 'that there is reasonable cause to believe that the specific things to be searched for and seized are located on the property to which entry is sought' and not merely 'that the owner of the property is suspected of a crime.'" *United States v. McPhearson*, 469 F.3d 518, 524 (6th Cir. 2006) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

## B.    Standing

The Government argues that Defendant lacks standing to challenge the Search Warrant because Defendant has not established that he had a legitimate expectation of privacy "in the area searched" (*i.e.*, the house at XXXXX Flanders Street). *United States v. Whitehead*, 415 F.3d 583, 587 (6th Cir. 2005).  In this case, Defendant has represented in his Motion that: (1) XXXXX Flanders was his mother's house, (2) he had a key to the home, (3) had a bedroom there, (4) he occasionally resided there (including the night before the search and on days in "close proximity" to the search), and (5) he planned to stay there the evening of the search.  The Government states that, if there was actual record evidence of those representations, the Government would concede that Defendant has standing.  The Government argues, however, that because such evidence (*i.e.*, Defendant's testimony) is not yet before the Court, Defendant's Motion should be summarily

denied.

The Court finds that Defendant has standing. Most significantly, the record evidence offered by the Government clearly supports a finding that Defendant had a legitimate expectation of privacy at XXXXX Flanders Street. By way of example, but not limitation, the Government offered the following exhibits to its response brief:

A.  Exhibit A - the Affidavit, which includes the following observations by Government agents: (1) upon departing from the scene of the undercover buy, Defendant "was surveilled to the residence located at XXXXX Flanders, Detroit, Michigan, parked in the driveway and . . . entered the side door[,]" (2) Defendant was "playing football in the street in front of XXXXX Flanders location," and (3) Defendant was "observed keying the side door and removing items from the rear of the black 2007 Chevy Trailblazer and taking them into the XXXXX Flanders location, [and] your affiant believes that the subject described above is in control of the XXXXX Flanders location."

B.  Exhibit B - the Report of Investigation prepared by Agent DeVantier, a report that includes the exact same description set forth in subparagraph A. immediately above.

C.  Exhibit C - the Report of Investigation prepared by Special Agent Michael E. Yott, which included the following observations or statements: (1) Defendant "departed the gas station and S/A Yott, along with other surveillance officers, followed [Defendant] to the residence located at XXXXX Flanders, Detroit, Michigan, park in the driveway and enter the side door[,]" and (2) upon questioning of Defendant by Agent Yott "about the residence located at XXXXX Flanders, Detroit, Michigan," Defendant "indicated that house belonged to his mother and he has a room on the second floor which contained a blue suit case and his clothing."

D.  Exhibit E - the Report of Investigation prepared by Task Force Officer Thomas R. Bunch), which stated that task force officer Bunch "conducted a fixed surveillance of a single family residence located at XXXXX Flanders, Detroit, MI" and observed:

> a heavy set, black male, approximately six feet tall, medium to dark complexion, . . . who would later be identified as [Defendant], . . . playing catch with a football in the driveway, front lawn and street with several teenagers. . . . During the course of this surveillance, TFO Burch observed [Defendant] open the rear hatch of the Trailblazer and . . . . remove unknown items from the Trialblazer and carry them into the residence, after unlocking the side door with a key and entering the residence.

The Court finds that the foregoing statements clearly establish that the XXXXX Flanders Street

residence was one at which Defendant had a legitimate expectation of privacy. For example, Defendant parked in the driveway, he had a key to the house, he eventually took items from the Chevy Trailblazer he was driving into the house, and he played in the yard and on the street in front of the house with teenagers/football players from the neighborhood. Based on the documents in the record, none of the teenagers/football players arrived at XXXXX Flanders Street in Defendant's vehicle. The foregoing circumstances, as well as the fact that Defendant's mother lived at XXXXX Flanders, indicate that XXXXX Flanders was a residence that Defendant frequented. The Court also finds that the statements made by Defendant when questioned by Agent Yott at the time he was stopped/arrested are consistent with the representations made by Defendant in support of his Motion, *i.e.*, that the house belonged to Defendant's mother, that he had a room on the second floor and that his suit case and clothing were in that room. Finally, Agent DeVantier himself represented in the Affidavit that, based on the August 27, 2010, activities of the individual believed to be Botten (*i.e.*, Defendant), Defendant was "in control of the XXXXX Flanders location" on that date.

For the foregoing reasons, the Court concludes that Defendant has standing to challenge the Search Warrant.

**C.    The "Redacted Affidavit" Establishes Probable Cause to Issue the Search Warrant**

Defendant argues that there is a lack of probable cause in this case because the Affidavit fails to demonstrate any nexus between the XXXXX Flanders home and drugs. Defendant's argument is based, in part, on the fact that certain of the language set forth in the Affidavit must be redacted because it is false and such redacted language cannot be considered when assessing whether there was sufficient probable cause to support the issuance of the Search Warrant to search the XXXXX Flanders home.

1.    *Affidavit Language to be - or not to be - Redacted*

The Court first addresses the language in the Search Warrant Defendant believes should be redacted. As noted above, it is undisputed that Samuel Eric Botten has nothing to do with this case and the use of his name was erroneous. Defendant argues that any references to Botten are therefore false and should be stricken. The Court agrees with Defendant's argument, but only in part. For purposes of this Opinion and Order, the Court shall not consider (and shall treat as stricken) the following portions of the Affidavit that are not relevant to this case (even if such portions are true statements of fact):

1.    The last sentence of page 1, paragraph 8 of the Affidavit ("A law enforcement computerized check of XXXXX Flanders, Detroit, Michigan revealed that BOTTEN listed the address at XXXXX Flanders as a residence in 2009.").

2.    Page 1, paragraph 9 of the Affidavit, in its entirety ("Further, based upon a law enforcement computerized check which also indicated an outstanding warrant issued in BOTTEN's name for Dangerous Drugs (Marijuana), Transportation of Drugs for Sale, and Conspiracy to Transport Marijuana out of Navajo County, Arizona on 04/25/2010 with full extradition. BOTTEN's criminal history also includes a marijuana charge by DEA in 03/27/2008.").

The Court also agrees that it should not consider (and shall treat as stricken) the third sentence of page 1, paragraph 7 of the Affidavit ("This individual [the unknown black male] indicated the narcotics would arrive at this location shortly.") because the unknown black male was not known to Agent DeVantier, nor had the unknown black male otherwise been identified as a reliable or credible source of information.

Defendant also asserts that the task force officers, namely Agent DeVantier, submitted the Affidavit with false allegations, some of which reflected at least a "reckless disregard for the truth." Defendant's assertion is based on the fact that, when task force officers stopped and arrested Defendant at the football field, they knew that Samuel Eric Botten was not involved in the events that led to seeking the Search Warrant. Therefore, Defendant believes Agent DeVantier recklessly or intentionally included false statements regarding Botten in the Affidavit.

9

The validity of a search warrant is to be determined at the time the affidavit is presented to

a magistrate judge for review, however, not in light of information learned by law enforcement

officials thereafter, such as at the time of executing the search warrant. *See, e.g.*, *United States v.*

*Noel*, 938 F.2d 685, 687 (6th Cir. 1991). *See also Maryland v. Garrison*, 480 U.S. 79 (1987).

Although the exact time of the stop and arrest of Defendant at the football field is not discernible

from the record, the record does clearly reflect that such stop and arrest did not occur until after the

time the Affidavit was submitted to the magistrate judge (about 6:49 p.m.).  The record also clearly

reflects that the magistrate judge signed the Search Warrant and a copy of the Search Warrant was

faxed to Agent DeVantier at 7:04 p.m., prior to the time Agent DeVantier could have learned that

the "individual believed to be Botten" was not, in fact, Botten but instead Defendant.  The record

is uniform in reflecting that the earliest that Agent DeVantier learned of Defendant's identity was

when other agents called Agent DeVantier to tell him that they had stopped and detained Defendant,

which was at about 8:35 p.m. Accordingly, the Court concludes that there is no evidence to support

Defendant's claim that Agent DeVantier's recklessly or intentionally failed to identify Defendant

by his name (Deatrice Reed), rather than as the "individual believed to be Botten," when submitting

the Affidavit.  Thus, the Court shall not strike or omit any references of the activities of the

"individual believed to be Botten."

In addition, the Court does not agree with Defendant's assertions that because the Affidavit

erroneously identifies the human subject of the Search Warrant as Samuel Botten, such allegedly

false portions of the Affidavit (those describing what "Botten" did) should be omitted when

assessing whether the Affidavit contains probable cause.  For example, Defendant states that the

Affidavit: (a) "mistakenly asserts that a person by the name of Samuel Botten participated in a

narcotics sale of crack cocaine at a location on Chelsea Street, Detroit" and  (b) states that "Botten

drove the vehicle form the narcotics sale to an address at XXXXX Flanders, Detroit, Michigan."

Defendant's assertions are flawed on their face, however, as the Affidavit expressly and repeatedly

identifies an "individual believed to be Botten." As Defendant recognizes, a search warrant affidavit

does not have to name or describe the suspect. *United States v. Ellison*, 632 F.3d 347 (6th Cir. 2011).

Therefore, as the Affidavit consistently describes the activities of this one person (the "individual

believed to be Botten") and the accuracy of such activities are not disputed, the Court concludes that

there is nothing false about such statements. The Court thus finds that there is no reason to strike

such statements - or any reason the Court should not consider such statements - when making a

probable cause determination in this matter.

        2.      *Redacted Affidavit Establishes Probable Cause to Support the Search Warrant*

      The Court now turns to whether the Affidavit, if redacted as discussed above, establishes

probable cause to support the issuance of the Search Warrant. For the reasons that follow, the Court

finds that such a redacted Affidavit (the "Redacted Affidavit") would still establish such probable

cause. Defendant first contends that "there is no information in the warrant to show [D]efendant's

status as a 'known' drug dealer and that Defendant also recently engaged in drug activity, as

required by both *McPhearson*" and *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002)

(probable cause existed where defendant was a known drug dealer and he had recently signed for

drugs delivered via FedEx to a different home). The Court finds that the Redacted Affidavit

demonstrates otherwise.

      As the Redacted Affidavit states, an "individual believed to be Botten" arrived at Chelsea

Street, Detroit, Michigan, at approximately 2:24 p.m. on August 27, 2010, driving a 2007 Chevy

Trail Blazer, with license plate CEB1935. The Redacted Affidavit states that the unknown black

male: (1) left the undercover officer, (2) went up to the individual believed to be Botten, and (3)

came back to the task force officer with "a quantity of suspected crack cocaine (field tested positive) in exchange for pre-recorded government funds." That series of events was witnessed by task force officers and the substance the unknown black male brought to the undercover officer (field) tested positive for cocaine. Accordingly, the Court finds that the Redacted Affidavit contains probable cause to show that the "individual believed to be Botten" was a drug dealer. The Court also finds that, not only does the Redacted Affidavit show that individual was a drug dealer, it shows that the "individual believed to be Botten" was <u>actively</u> engaged in drug transactions, *i.e.*, he was, at that very time, a drug dealer. As such, the Court does not agree with Defendant's contentions that the "individual believed to be Botten" was not a known drug dealer that had recently engaged in drug activity - or that there was "no evidence of 'on going' drug trafficking."

Defendant next contends that the Redacted Affidavit "does not articulate facts supporting probable cause to believe that the person driving the Trailblazer vehicle resided at Flanders Street." The Court disagrees. As the Redacted Affidavit states, the "individual believed to be Botten" drove away from Chelsea Street in the 2007 Chevy Trail Blazer and was under surveillance until that same individual: (1) pulled into and parked in the driveway at XXXXX Flanders, (2) twice went into the home at XXXXX Flanders, including by using a key in the side door at least one time, (3) carried items from the back of the 2007 Chevy Trail Blazer into the home at XXXXX Flanders, and (4) played football with others in the yard, driveway and street in front of XXXXX Flanders.[3] Significantly, Defendant does not challenge any of those statements. The Court finds that such

---

[3]Defendant's argument that the task force officers did not verify utilities information, drivers license records, real estate records or run the plate of the 2007 Chevy Trail Blazer to check the registration and address lacks merit. There is no obligation for the Government to undertake such tasks and the Court's review of the Redacted Affidavit is to be "judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added." *United States v. Allen*, 211 F.3d 970, 972, 973 (6th Cir. 2000) (en banc).

representations adequately establish probable cause that the individual under surveillance resided at XXXXX Flanders Street.

Finally, the Court notes that Defendant (the "individual believed to be Botten") proceeded directly from a drug transaction (where he supplied the crack cocaine in exchange for the $200 the undercover police officer gave to the unknown black male to complete the transaction) to the XXXXX Flanders Street house, a house at which the Court finds there was probable cause to believe that Defendant resided. On the basis of such events, the Court finds that "the circumstances . . . indicate [that] evidence of illegal activity w[ould] be found there." *Carpenter*, 360 F.3d at 594.

3.    *Conclusion*

For the reasons set forth above, the Court finds that the Redacted Affidavit establishes probable cause to issue the Search Warrant search XXXXX Flanders, the 2007 Chevy Trail Blazer and the "individual believed to be Botten"). As there is no dispute that the "individual believed to be Botten" is, in fact, Defendant, the Court holds that the Search Warrant in this case was validly issued.

## IV.  CONCLUSION

For the reasons set forth above, the Court hereby DENIES Defendant's Motion to Suppress Evidence (Docket #24).

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: November 7, 2011

CERTIFICATE OF SERVICE

       The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on November 7, 2011.

<div style="margin-left: 45%;">

S/Marie E. Verlinde
Case Manager
(810) 984-3290
</div>